## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

ERWIN PEARL, INC. and ARMBRUST
INTERNATIONAL, LTD.,

       Plaintiffs,

v.

       C.A. No. 19-CV-00045

THOSE CERTAIN INTERESTED
UNDERWRITERS AT LLOYD'S LONDON
subscribing to CERTIFICATE NUMBER
B1262SS0140417/2764,

       **JURY TRIAL DEMANDED**

       Defendants.

### COMPLAINT

Plaintiffs, Erwin Pearl, Inc. ("EPI") and Armbrust International, Ltd.

("Armbrust"), by its undersigned attorneys, brings this complaint against Defendants, those

Certain Interested Underwriters at Lloyds London subscribing to Certificate Number

B1262SS0140417/2764, and alleges as follows:

### Introduction

This suit arises out of a denial of coverage for an insurance claim pertaining to

losses discovered between October 20, 2017 and October 20, 2018 and caused by acts of

infidelity by the former Chief Operating Officer of Armbrust.

### Parties

1.     EPI is a corporation organized and existing under the laws of the State of

New York with its principal place of business located at 389 Fifth Avenue, New York, New

York 10016.  EPI derives its name from that of its founder and sole shareholder, Mr. Erwin

Pearl.  EPI, along with its affiliated companies, is in the business of designing, manufacturing, distributing, marketing and selling of jewelry products throughout the United States.  EPI, through an affiliated company, maintains a nationwide chain of retail jewelry stores and, in addition, EPI, through affiliated companies, maintains facilities for the manufacturing and distributing of precious metal and fashion jewelry products at locations in Rhode Island.

2.      Armbrust is a corporation organized and existing under the laws of the State of Rhode Island with its principal place of business located at 735 Allens Avenue, Providence, Rhode Island.  Armbrust is a sister corporation affiliated with EPI and Erwin Pearl owns 100% of the corporate shares of Armbrust.

3.      Defendants, Those Certain Interested Underwriters at Lloyd's London subscribing to Certificate Number B1261SS0140417/2764 ("Underwriters"), are members of a certain syndicate of insurance underwriters who do business in the international insurance marketplace known as Lloyd's of London and who subscribed to designated percentages of risk under the aforementioned certificate number.  Upon information and belief, each of the Underwriters is a citizen or subject of a foreign state.

## Jurisdiction

4.      Jurisdiction is proper under 28 U.S.C. § 1332 because the controversy is between citizens of a State and citizens or subjects of a foreign state. The amount in dispute exceeds $75,000.00 exclusive of interest and costs. This Court has personal jurisdiction over Underwriters because, pursuant to the insurance certificate, Underwriters have submitted themselves "to a court of competent jurisdiction within the United States."

## Venue

5.      Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this claim occurred in this district.

## Facts

6.      Because insurance coverage is a precondition to doing business in the jewelry industry, EPI has historically maintained, on behalf of itself and all its subsidiary and/or associated and/or affiliated and/or allied corporations, companies and/or firms worldwide, including but not limited to Armbrust, a comprehensive jewelers' block insurance policy on a year-to-year basis to protect it in case of losses sustained in and by its businesses.

7.      Underwriters issued Jeweler's Block Insurance Certificate Number B1262SS0140417/2764 ("Certificate" or "Policy") effective from October 20, 2017 and expiring October 20, 2018, in favor of EPI, Erwin Pearl Retail, Inc., Fernando Originals, LTD., Armbrust,  Allens Avenue Realty, LLC and all subsidiary and/or associated and/or affiliated and/or allied corporations, companies and/or firms worldwide all as now or hereafter constituted and coming under their active control ("Insured"). A true and accurate copy of the Certificate is attached hereto, incorporated as a part herein, and marked as Exhibit A.

8.      On or about May 25, 2018, EPI and Armbrust submitted a claim under the Certificate following the discovery of acts of infidelity by Mr. Harley "Skip" Waite, Chief Operating Officer at Armbrust. The infidelity included the taking of unauthorized funds in the form of excess compensation and lodging, unauthorized personal use of company credit cards and unauthorized employee compensation and benefits being provided to other employees of Armbrust.  Mr. Waite was charged in the Superior Court in and for the County of Providence, Rhode Island with one count of embezzlement and one count of fraudulent use of a credit card

on May 21, 2018.  That criminal case remains pending. The total claim presented to

Underwriters at that time was estimated to be between $700,000 and $800,000.

   9.  On or about December 10, 2018, the Underwriters denied the claim by EPI

and Armbrust, concluding that: (1) the Insured Interest listed in the Policy includes "merchandise

and materials usual to the conduct of the Insured's business" and "does not include salaries,

expenses and benefits;" and (2) Mr. Waite listed himself as a director of FO, Inc., one of the

insured entities, and therefore his dishonest acts were excluded from coverage under the Policy.

A true and accurate copy of the letter denying coverage is attached hereto and marked as Exhibit

B.  The Underwriters conclusions and denial of the claim are incorrect as a matter of fact and

law.

   10.  The Certificate in question had an addendum, "Extension No. 4," which

covered employee infidelity claims notwithstanding an exclusion in the Policy's general

language. That extension reads, in pertinent part:

> It is hereby understood and agreed notwithstanding anything contained in
> Exclusion (1), this policy is extended to cover all such direct loss as the
> Insured shall during the period of this Policy discover he has sustained
> from Insured Interest as defined herein through any act or acts of fraud or
> dishonesty committed by any employee whilst in his service to an
> amount not exceeding the sum of USD 1,000,000 each and every loss
> and USD 1,250,000 in the annual aggregate.
>
> Provided always that this extension is subject to the following conditions
> which so far as they relate to anything to be done by the Insured shall be
> deemed to be conditions precedent to the right of the Insured to recover
> hereunder:-
>
> > 1.  The word "Employee" in this extension shall mean any
> > and all persons other than Directors who are engaged in the
> > service of the Insured in the course of his business anywhere
> > within the geographical limits stated herein, and who are
> > remunerated for such service wholly or partly by salary or
> > wages.

11.     Contrary to what is stated in the letter declining coverage (Exhibit B), the term "Insured Interest" is not a defined term in the Policy, which omission by itself creates an ambiguity necessitating judicial construction.  The policy does have a Special Condition which reads as follows:

> Jewelry, gold and silver ornaments, gold ware and silverware, fine and cultured pearls, diamonds and precious stones in any form, set or unset, of any sort or kind whatsoever, platinum, precious metals, semi-precious stones, jades, clocks, watches, specie, coins, cheques, bonds, securities and the like, banknotes and scrip and all other merchandise and materials usual to the conduct of the Insured's business, whether the same be the property of the said Insured or for which they are responsible or have undertaken to effect insurance.

12.     The above-quoted Policy language is exceptionally broad.  Even if one were to consider this Special Condition as defining Insured Interest under Exclusion No. 4, it is clear, applying the plain and ordinary meaning of the words, that the inclusion of "specie, coins, cheques, …banknotes and scrip" all refer to money used in "the conduct of the Insured's business."  Virtually every type of money is expressly included in the definition.

13.     The Underwriters' unsupported conclusion in its denial letter that "[t]his does not include salaries, expenses and benefits" does not appear to be based upon any express language of the Policy which, as a matter of law, must be construed against the insurer who wrote it.  Moreover, the Underwriters' apparent reliance upon the language "and all other merchandise and materials usual to the conduct of the Insured's business" is misplaced.  That language expands the definition of what is covered; it does not purport to limit the definition—at least not when giving the words their plain and ordinary meaning.  Moreover, the definition of what is covered is not, as the Underwriters assert, limited to property comprising the inventory of the company.  If that were the case, the policy could easily have said so.  It does not.

14.     An ordinary insured would have reasonably understood the language of the Special Condition to include all types of money that is the property of the insured used in "the conduct of the Insured's business." Construing the language of the policy in favor of the insured, as the law mandates, leads to the inescapable conclusion that the losses caused by Mr. Waite's infidelities as an employee are covered under the Certificate.

15.     The second basis for the Underwriters' declination of coverage, the assertion that Mr. Waite was listed on an annual report filed with the Rhode Island Secretary of State as a director of FO, Inc., attempts to take advantage of a harmless mistake and cannot serve as grounds for denying coverage.  FO, Inc., which does business under the name "Fernando's Originals," is one of EPI's affiliated entities and is a Rhode Island based manufacturer and distributor of fashion jewelry,  Extension No. 4 of the Certificate, which covers employee infidelity claims, excludes "Directors" from the definition of "Employee."  As EPI has repeatedly explained to the Underwriters, Mr. Waite was in fact never a director of FO, Inc., nor was he ever a director of any Erwin Pearl related company including Armbrust, the company he actually worked for.  FO, Inc. and Armbrust are both 100% owned by Erwin Pearl (the individual) and only Erwin Pearl has the legal authority to elect directors of those companies.  At no time did Erwin Pearl ever elect or appoint Mr. Waite to be a director of FO, Inc. or any other company and, in fact, FO, Inc. operates as a "close corporation" pursuant to §7-1.2-1701 of the Rhode Island Business Corporation Act.  The powers normally vested in a board of directors are, in a close corporation, instead assigned to the single shareholder, in this case, Erwin Pearl.

16.     The Underwriters have entirely and mistakenly relied upon an inaccurate 2018 Annual Report for FO, Inc. that was routinely filed along with an annual fee with the Rhode Island Secretary of State.  The original 2018 annual report for FO, Inc. misidentified Mr.

Waite as a director.  In truth, Mr. Waite not only was not a director of that corporation, he was never an employee of FO, Inc. and never had any official position whatsoever with that company.  Instead, Mr. Waite was an officer but not a director of the company he actually worked for---Armbrust.  The mistaken 2018 Annual Report for FO, Inc. has been corrected and is otherwise of no legal significance since directors are not elected or appointed by annual reports but, rather, by formal votes of shareholders.

17.     Despite being fully informed of the facts relating to Mr. Waite, and despite having no evidence proving that Mr. Waite was a director of FO, Inc. apart from the erroneous annual report (which was subsequently corrected), the Underwriters have continued to deny the insurance claim for losses caused by Mr. Waite's infidelity.

**OFFENSES CHARGED**
**COUNT I—BREACH OF INSURANCE CONTRACT**

18.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 17 inclusive as if set forth in full herein.

19.     The Underwriters covenanted to indemnify Plaintiffs against all direct losses discovered during the policy period to have been sustained through any act or acts of fraud or dishonesty committed by any employee to an amount not exceeding the sum of $1,000,000.00 for each and every loss and $1,250,000.00 in the annual aggregate.

20.     Plaintiffs made a timely claim under the Certificate to be indemnified for the full insured value of their loss.

21.     Plaintiffs provided Underwriters all necessary information and assistance to enable the Underwriters to investigate the claim and to take action against the defaulting employee.

22.    At all times material to this complaint, Plaintiffs were in compliance with all of their duties and obligations as an insured under the Certificate.

23.    To date, the Underwriters have refused to pay or satisfactorily settle the claim.

## COUNT II---CONTRACTUAL BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

24.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 23 inclusive as if set forth in full herein.

25.    There is implied in every contract a covenant of good faith and fair dealing in order to achieve the contractual objectives.

26.    Plaintiffs and the Underwriters entered into a valid and binding contract of insurance as set forth in the Certificate giving rise to Underwriters' duty of good faith and fair dealing.

27.    The Underwriters breached their duty of good faith and fair dealing, and therefore breached their contract, by, in bad faith, misconstruing the Special Condition as limiting coverage to loss of inventory as opposed to the proper construction as property, including money, used in "the conduct of the Insured's business."  Underwriters also breached their duty by, in bad faith, ignoring the evidence that Mr. Waite was not a director of FO, Inc. Finally, Underwriters breached their duty of good faith and fair dealing by taking seven months to deny the claim after proof of loss was presented and by refusing to indemnify or properly compensate the Insureds for their loss.

28.    Plaintiffs have been injured and damaged as a result of Underwriters' breach of the covenant of good faith and fair dealing.

## COUNT III---BAD FAITH REFUSAL TO PAY
## CLAIM

29.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 28 inclusive as if set forth in full herein.

30.     Rhode Island Gen. Laws §9-1-33 provides a remedy against an insurer who wrongfully and in bad faith refuses to pay or settle a claim made pursuant to the terms of the policy, or otherwise wrongfully and in bad faith refuses to timely perform its obligations under the contract of insurance.

31.     The Underwriters acted wrongfully and in bad faith by misconstruing the Special Condition as limiting coverage to loss of inventory when the language, written by Underwriters, is much broader and applies to property, including money, used in "the conduct of the Insured's business."  Underwriters also acted wrongfully and in bad faith by ignoring the evidence that Mr. Waite was not a director of FO, Inc.  Finally, Underwriters acted wrongfully and in bad faith by taking seven months to deny the claim after proof of loss was presented and by refusing to indemnify or properly compensate Plaintiffs for their loss.

32.     Plaintiffs have been injured and damaged as a result of Underwriters' bad faith refusal to pay or settle the claim.

WHEREFORE, Plaintiffs pray for judgment against the Underwriters and each of them, jointly and severally, as follows:

(i)     For general damages within the policy limits in an amount to be set by the jury;

(ii)    For compensatory damages in an amount to be set by the jury;

(iii)   For Punitive damages in an amount to be set by the jury;

    (iv)     For reasonable attorneys' fees and costs of suit;

    (v)     For interest at the statutory rate; and

    (vi)     For such other and further relief as to the Court seems meet and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

ERWIN PEARL, INC AND ARMBRUST
INTERNATIONAL, LTD

By their Attorneys,

PARTRIDGE SNOW & HAHN LLP


/s/ Steven E. Snow
Steven E. Snow (#1774)
40 Westminster Street, Suite 1100
Providence, RI  02903
(401) 861-8200
(401) 861-8210 FAX
ssnow@psh.com

DATED:  January 31, 2019


3483251.1/3627-1