```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF RHODE ISLAND
_____
                                   )
ERWIN PEARL, INC. and ARMBRUST     )
INTERNATIONAL, LTD.                )
                                   )
         Plaintiffs,               )
                                   )
    v.                             )   C.A. No. 19-045 WES
                                   )
THOSE CERTAIN INTERESTED           )
UNDERWRITERS AT LLOYD'S LONDON     )
subscribing to CERITIFICATE NUMBER )
B1262SS0140417/2764,               )
                                   )
         Defendants.               )
_____)
```

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, District Judge.

Before the Court are Defendants' Motion to Dismiss For Lack of Subject Matter Jurisdiction and Failure to State a Claim ("Defs.' Mot. Dismiss"), ECF No. 8, and Defendants' Motion to Continue Hearing on Defendants' Motion to Dismiss Or, In the Alternative, to Stay Proceedings ("Defs.' Mot. Stay"), ECF No. 14. On January 23, 2020, the Court held a hearing on both motions. For the reasons stated below, the Court DENIES both motions.

I.  Motion to Continue or Stay

As a threshold matter, this Court must decide whether it should address the merits of Defendants' Motion to Dismiss, or rather, as Defendants request, continue or stay the matter.

1

Defendants argue that because this case had already proceeded further in New York state court, and Defendants' Motion for Summary Judgment is pending there, this Court should not decide the Defendants' Motion to Dismiss here. Defs.' Mot. Stay 1, 3. Plaintiffs respond that, since this action was filed first, Defendants are clearly forum shopping; additionally, Plaintiffs argue that the discovery conducted in the New York action was limited and that there will be no final judgment in that action anytime soon due to a possible appeal. Pls.' Obj. to Defs.' Mot. Stay 2-4, ECF No. 15.

Generally, where two actions are filed involving the same issues, "the forum where an action is first filed is given priority over subsequent actions." SW Indus., Inc. v. Aetna Cos. & Sur. Co., 653 F. Supp. 631, 634 (D.R.I. 1987) (citation omitted). Courts also favor a plaintiff's choice of forum. Brian Jackson & Co. v. Eximias Pharm. Corp., 248 F. Supp. 2d 31, 37 (D.R.I. 2003). Plaintiffs prefer to litigate in Rhode Island for the compelling reason that it is where the events relating to the underlying insurance claim occurred. Pls.' Obj. to Defs.' Mot. Stay. 3. The Court agrees with Plaintiff that the action has not proceeded so far in New York that it would cause significant inefficiencies or hardships for the parties to litigate this case in Rhode Island. See id. 3-4. Given that the action was filed here first, the events in question took place here, and it is Plaintiffs' choice

2

of forum, the Court finds that, on balance, the equities weigh in favor of allowing the action to continue in Rhode Island in this court. Having decided to keep the case, the Court will decide the merits of Defendants' Motion to Dismiss.

II. Factual Background

This matter arises out of an insurance coverage dispute. Erwin Pearl, Inc. ("EPI") is incorporated in the State of New York, where it also has its principal place of business. Plaintiffs' Complaint ("Compl.") ¶1, ECF No.1. EPI's business is "designing, manufacturing, distributing, marketing and selling" jewelry throughout the country. Id. Armbrust International, Ltd. ("Armbrust") is a corporation affiliated with EPI that is incorporated in Rhode Island and has its principal place of business there. Id. ¶ 2. Defendants are members of a syndicate of insurance underwriters who do business in the Lloyd's of London marketplace. Id. ¶ 3. Defendants insured Erwin Pearl and Armbrust, among others[1], for the time period of October 20, 2017 to October 20, 2018 under Certificate Number B1262SS0140417/2764 ("Policy"). Compl. Ex.A, at 4, ECF No. 1-1. Under the policy, there were nine different Lloyd's of London syndicates that each subscribed to a percentage of the risk and are severally liable for that percentage of the overall liability. Id. at 22.

---

[1] Defendants also insured Erwin Pearl Retail, Inc., Fernando Originals, LTD, and Allens Avenue Realty, LLC. Compl. Ex.A, at 4.

3

In May 2018, Plaintiffs submitted an insurance claim to Defendants for $700,000-$800,000 in losses which plaintiffs suffered due to the alleged criminal acts of the former Chief Operating Officer of Armbrust.[2] Compl. ¶ 8. In December 2018, Defendants denied the claim, and Plaintiffs then brought this suit. Id. ¶ 9. Plaintiffs' complaint alleges breach of contract, as well as breach of the implied covenant of good faith and fair dealing, and bad faith refusal to pay the claim. Compl. ¶¶ 18-32. Defendants argue in their motion that the Court does not have subject matter jurisdiction over this action because the amount in controversy requirement is not met; in the alternative, plaintiffs say that the Court should dismiss plaintiffs' bad faith claim for failure to state a claim. Defs.' Mot. Dismiss 2.

III. Standard of Review

In determining whether Plaintiffs' Complaint survives under Federal Rule of Civil Procedure 12(b)(1), the good faith sum claimed by the plaintiffs is initially controlling. See Spielman v. Genzyme Corp., 251 F.3d 1, 5 (1st Cir. 2001). But once defendants contest the damages allegation, the burden shifts to the plaintiffs to "allege with sufficient particularity facts that in some way support the minimum jurisdictional amount." Ins.

---

[2] The Court need not get into all the details of the dispute; they are in the Complaint and are not relevant for determining the merits of Defendants' Motion to Dismiss.

4

Brokers W., Inc. v. Liquid Outcome, LLC, 241 F. Supp. 3d 339, 343 (D.R.I. 2017) (internal quotation marks omitted).[3]

IV. Analysis

28 U.S.C. § 1332 states that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . citizens of different states." Here, Plaintiffs claim a maximum of $800,000 in damages resulting from Defendants' alleged breach of contract (Count I). Compl. ¶ 8. However, due to the idiosyncratic nature of the Lloyd's of London syndicate insurance as described above, that $800,000 of claimed damages does not satisfy the amount in controversy requirement. See 28 U.S.C. § 1332; see also Defs.' Mot. Dismiss 4-6.[4]

---

[3] Because the Court is deciding the matter on the jurisdictional issue, it need not address the standard for a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 129b)(6).

[4] For a more detailed explanation, see Defs.' Mot. Dismiss 5, and specifically the chart. This explains how, because of the way each syndicate is severally liable for its percentage of the risk, five out of the nine syndicates are only liable for an amount under $75,000. Accordingly, if any of the syndicates do not meet the amount in controversy requirement, then the Court does not have jurisdiction against all of the Defendants; and because all of the syndicates are indispensable, the action must be dismissed. Id. 5-6; see Allendale Mutual Ins. Co. v. Excess Ins. Co. Ltd., 62 F. Supp. 2d 1116 (S.D.N.Y. 1999) (finding that each Lloyd's of London investor "is an indispensable party by virtue of the absence of joint liability.").

Plaintiffs contend that Defendants failed to consider all the damages claimed in the Complaint, specifically the punitive and compensatory damages alleged on the face of Plaintiff's bad faith claim (Count III), and that those damages would result in all of the syndicates meeting the amount in controversy requirement. Pls.' Resp. to Defs.' Mot. Dismiss ("Pls.' Resp.") 3, ECF No. 11; see Compl. ¶¶ 29-32. Therefore, as Defendants sum up in their reply, "[i]t is . . . agreed between the parties that the only way for plaintiffs to meet the amount in controversy is if this Court allows plaintiffs' bad faith claim under Rhode Island law to proceed. This is because, it is only by reliance on their bad faith claims that plaintiffs can even plead their speculative request for punitive damages, and without such damages plaintiffs are unable to meet the jurisdictional threshold." Defs.' Reply to Pls.' Resp. 1, ECF No. 12. Defendants are correct as to the only real legal question in dispute here: whether Plaintiffs' bad faith claim should be allowed to proceed, saving diversity jurisdiction.

In order to answer this question, the Court must first decide (1) whether the contract's choice of law – New York – should be honored under Rhode Island's choice of law principles; and, (2) if so, whether the Court should also apply New York law to Plaintiffs' bad faith claim even though it is brought under a Rhode Island statute.

As to the first question, the Policy states that "[t]his Insurance shall be governed by and construed in accordance with the law of the State of New York . . . ." Compl. Ex. A, at 17. Rhode Island law generally recognizes choice of law clauses. See Sheer Asset Mgmt. Partners v. Lauro Thin Films, Inc., 731 A.2d 708, 710 (R.I. 1999) "[T]he law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless . . . the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice." Id. (quoting Restatement (Second) of Conflict of Laws § 187(2)(a) (1971). "Among those jurisdictions in which there is a reasonable basis for choosing the law of that jurisdiction are: (1) the place of performance of one of the parties; (2) the domicile of one of the parties; or (3) the principal place of business of a party." Id. at 708(citation omitted).

Here, Erwin Pearl, Inc. is a New York based entity,[5] and the contract itself was negotiated and accepted in New York. Compl.

---

[5] Armbrust and Fernando Originals, LTD, are incorporated in Rhode Island. Compl. ¶ 2; Defs.' Mot. Dismiss Ex.A, at 19, ECF 14-1. It is not entirely clear from the record where Erwin Pearl Realty is incorporated, but Defendants claim that it is in new York, and Plaintiffs do not dispute this. Defs.' Mot. Dismiss 7. The record is silent as to the location of Allens Avenue Realty, LLC, although it is likely in Rhode Island, since Armbrust's principal place of business is on Allens Avenue in Providence, R.I. Compl. ¶ 2.

7

¶¶ 1-2; Defs.' Mot. Dismiss 7-8.  Those are sufficient ties to New York such that, under Rhode Island law, this Court will not interfere with the parties' contractual choice to have New York law govern the contract.  Sheer Asset Mgmt., 731 A.2d at 710 (finding that the parties' choice of Connecticut law was reasonable where the original lender was a Connecticut corporation); Barakan v. Dunkin' Donuts Inc., 520 F. Supp. 2d 333, 340 (D.R.I. 2007) (recognizing that the parties' contractual choice of Rhode Island law governs the contract.)

Plaintiffs argue that even if this Court upholds the contractual choice of New York law, the Court should "find that the [choice of law] provision [in the Policy] only applies to the interpretation and construction of the insurance contract," and that the Court should still apply Rhode Island law to Plaintiffs' statutory tort claim of bad faith (Count III).[6] Pls.' Resp. 6-7; Compl. ¶¶ 29-32.  Plaintiffs' bad faith claim is brought under Rhode Island General Laws § 9-1-33, which provides a remedy against an insurer who wrongfully and in bad faith refuses to pay or settle a claim or to timely perform its obligations; it also provides for punitive damages.

---

[6] Plaintiffs do not dispute that if the Court were to apply New York law to the bad faith claim as well, it would require dismissal.  See generally Pls.' Resp.

8

Indeed, this Court has held that the mere fact that non-Rhode Island law applies to an agreement "does not mean that [a party] is not required to follow the requirements of Rhode Island law. . . ." Cty. Motors, Inc. v. Gen. Motors Corp., C.A. No. 00-108T, 2001 WL 34136693, at *6 (D.R.I. Jan. 29, 2001) (applying Michigan law to the contract but applying the Rhode Island motor vehicle dealer statute to the relationship between the parties); see also Katz v. Pershing, LLC, 672 F.3d 64, 72 (1st Cir. 2012) (applying New York law to a contract dispute and Massachusetts law to the other claims, where the parties conceded the issue).

In Summer Infant v. Bramson, C.A. No. 15-218 S, 2016 WL 552470, at *4 (D.R.I. Feb. 10, 2016), this Court held that where "the allegations go beyond a breach of contract -- namely, that [Plaintiff] did not have an enforceable non-compete binding [Defendants], and instead resorted to a frivolous lawsuit to prevent them from pursuing valid business opportunities" a § 93A claim under Massachusetts law could stand, even where the employment contract was governed by Rhode Island law. Likewise, Plaintiffs' bad faith allegations, as they must, go beyond their breach of contract claim -- Plaintiffs allege that Defendants acted wrongfully and in bad faith by misconstruing the language of the insurance policy, by ignoring evidence that the employee who embezzled money was not a director of one of the companies, and by taking seven months to deny the claim. Compl. ¶¶ 30-32. These are

9

precisely the type of actions which, if true, Rhode Island Gen. Laws § 9-1-33 is meant to protect against. Moreover, if all a company needs to do to avoid complying with this statute is to choose a different state's law in its contracts, it would render the prohibition toothless. Thus, the Court agrees with Plaintiffs that their statutory bad faith claim is governed by Rhode Island law and should not be dismissed.[7]

V. Conclusion

In conclusion, while New York law governs the contract dispute, it does not govern Plaintiffs' bad faith claim under Rhode Island law in Count III. The damages Plaintiffs plead in that Count are enough to meet diversity jurisdiction at this juncture. See Compl. ¶¶ 30-32. Accordingly, the Court has jurisdiction over this action and DENIES Defendants' Motion to Dismiss, ECF No. 8, as well as Defendants' Motion to Continue Hearing on Defendants' Motion to Dismiss or Stay Proceedings, ECF No. 14.

IT IS SO ORDERED.

/s/ William E. Smith

William E. Smith
District Judge
Date: February 18, 2020

---

[7] The Court need not decide whether the bad faith claim should be dismissed under New York law as duplicative of the underlying breach of contract claim.

10